The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The defendant has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except as modified herein to conform to the stipulations of the parties concerning the average weekly wage and the addition of Finding of Fact No. 15 and the Order relating to attorney's fees for the appeal.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement dated August 12, 1994, as
STIPULATIONS
1. At the time of the alleged contraction of an occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant-employer is self-insured.
4. Plaintiff's average weekly wage was $607.39 per week, yielding a compensation rate of $404.89 per week, based upon the written stipulation of the parties.
5. The parties stipulated into evidence the exhibits attached to the Pre-Trial Agreement marked as Plaintiff's Exhibits 1 through 11, which includes plaintiff's medical records.
6. The parties also stipulated into evidence Supplemental Stipulations dated June 2, 1995, and a Second Set of Supplemental Stipulations dated July 31, 1995.
7. The record of the disability payments made to plaintiff was stipulated into evidence as Stipulated Exhibit 1. Plaintiff was paid disability benefits in the amount of $1,314.29 under a group-sponsored employee benefits program fully funded by defendant-employer.
8. The videotape of plaintiff's job duties was stipulated into evidence as Stipulated Exhibit 2.
***********
The Full Commission adopts the findings of fact by the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was 34 years old. She is a high school graduate and has been employed since April 1978 at the defendant's Wilson plant which manufactures glass bottles.
2. While employed by defendant-employer, plaintiff performed primary jobs and also had back up jobs. Plaintiff was normally assigned to her primary job, but performed the back up job when there was a need for additional help. She was assigned on occasion to work the back up job for as much as forty hours per week instead of working on her primary job. On other occasions, plaintiff performed the back up job in addition to her primary job, working on her back up job for one or two hours as overtime or for an entire second shift.
3. Plaintiff's primary job from 1979 through 1982 was a quality control inspector. In this position, she generally spent approximately six hours a day inspecting glass bottles. From 1983 through July of 1987, plaintiff's primary job was operating a labeling machine which required the operation of switches and buttons with the right hand.
4. From July 1987 until October 1993, plaintiff's primary job was a utility worker in the batch and furnace department. As a utility worker, plaintiff generally was rotated on a weekly basis among three job assignments: operating a payloader, utility cleanup, and working in the recycling center.
5. When assigned to operate the payloader for a week, plaintiff generally spent seven hours each shift operating this vehicle in a confined area. Her job required continually moving one hand and wrist to operate levers while the other hand was steering and shifting gears.
6. When assigned for a week to utility cleanup, plaintiff performed a number of duties including sweeping heavy glass and other debris, moving and dumping the wheel barrow, using a shovel, and using both hands to grip the jackhammer.
7. While working in the recycling center, plaintiff generally worked six hours each shift operating a forklift in close areas. She used her right hand constantly to operate levers and the left to steer the forklift. One hour of each shift generally was devoted to tearing down and stacking large cardboard containers which required strenuous use of the hands and wrist to grip, pull, and tear down the containers.
8. From July 1984 until October 1993, plaintiff's back up job generally was a batch rail car unloader. She occasionally performed this job forty hours per week, and other times she would work overtime from one hour up to an entire second shift performing the batch rail car unloader duties. She unloaded materials from train cars and used five foot metal bars to open compartments. This required the use of both hands, forcefully pulling and pushing on the metal bar. Her job duties also required the use of her hands to lift, position, and grip a sixty-pound vibrator.
9. Plaintiff has no history of rheumatory arthritis, diabetes, thyroid disease or any other major medical condition.
10. In the early 1980's, plaintiff began to experience her first symptoms of tingling and numbness of her hands at night. Her symptoms would come and go. Through the years her symptoms worsened, and the pain and numbness varied with the level of her hand activity. Eventually, plaintiff started to lose her grip and had difficulty opening and holding onto items.
11. Plaintiff received medical treatment from defendant-employer's plant nurse and plant doctor. On July 28, 1993, plaintiff was first diagnosed as having bilateral carpal tunnel syndrome by Dr. Lawrence Krabill. She received conservative treatment and was referred to Dr. Sellers Crisp, an orthopedic surgeon. After nerve conduction studies, Dr. Crisp performed a left carpal tunnel release on October 26, 1993.
12. Following her surgery, plaintiff participated in physical therapy, and her condition improved. She was released and returned to work with light-duty restrictions on December 6, 1993. She continued to work light-duty until released to return to regular work on March 29, 1994. At the time of the hearing, plaintiff continued to be employed at defendant-employer.
13. As a result of her employment with defendant-employer, plaintiff was placed at an increased risk of developing bilateral carpal tunnel syndrome as compared to members of the general public not so exposed. The use of plaintiff's hands to perform work as a utility employee and rail car unloader at defendant-employer's glass plant caused plaintiff's bilateral carpal tunnel syndrome.
14. As a result of plaintiff's bilateral carpal tunnel syndrome, she was unable to earn wages in her employment with defendant-employer or in any other employment from October 27, 1993 through December 5, 1993. During this period, plaintiff was paid $1,314.29 in disability benefits from a group disability plan to which she did not contribute and which was 100 percent funded by the defendant-employer. The plan provides for plaintiff to refund the disability benefit previously received upon an award of workers' compensation benefits.
15. The self-insured defendant herein brought this appeal and the Full Commission by its decision herein has adopted the Opinion and Award of the deputy commissioner and ordered the defendant to pay benefits to plaintiff. Pursuant to N.C. Gen. Stat. § 97-88, the Full Commission may in its discretion award reasonable attorney's fees to plaintiff's attorney to be paid by defendant-insurer as part of the bill of costs. Plaintiff has moved for attorney's fees and the Full Commission in its discretion has awarded attorney's fees as set forth in the Order below.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of her employment with defendant-employer, plaintiff developed bilateral carpal tunnel syndrome which is due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which is not an ordinary disease of life to which the general public is equally exposed outside the employment. Plaintiff, therefore, has contracted an occupational disease pursuant to the provisions of N.C. Gen. Stat. § 97-53(13).Booker v. Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189
(1979).
2. As a result of the occupational disease giving rise to this claim, plaintiff was temporarily totally disabled and entitled to receive compensation at the rate of $404.89 per week from October 27, 1993 through December 5, 1993, at which time she returned to work. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment of all medical expenses by defendant-employer as a result of her occupational disease for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-59.
**********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant-employer shall pay plaintiff temporary total disability compensation at the rate of $404.89 per week from October 27, 1993 through December 5, 1993. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendant shall pay all medical expenses incurred, or to be incurred, by plaintiff as the result of the occupational disease, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's period of disability, when bills for the same have been submitted through defendant-employer to the Industrial Commission and approved by the Commission.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff in Paragraph 1 of this Award is approved for plaintiff's counsel and shall be deducted from the lump sum due plaintiff and paid directly to her counsel.
4. Defendant shall pay the costs of this action.
ORDER
Upon Motion of plaintiff for a reasonable attorney's fee pursuant to N.C. Gen. Stat. § 97-88 and in the discretion of the undersigned, for good cause shown,
IT IS ORDERED that defendant shall pay to plaintiff's counsel an additional $800.00 in attorney's fees as part of the bill of costs for the appeal.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________________ COY M. VANCE COMMISSIONER
S/ ________________________ DIANNE C. SELLERS COMMISSIONER
BSB:be